FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

MAY 0 6 2011

JAMES N. HATTEN, Clerk
Deputy Clerk

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF GEORGIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Misc. Matter No. MI -0 38 |
| | ) | 1:11-MI-0 38   ATI |
| vs. | ) | No. 4:09-CV-01859 |
| | ) | (Eastern District of Missouri) |
| ROGER HARRIS, HEDIGER | ) | |
| ENTERPRISES, INC., FORUM MANOR | ) | |
| ASSOCIATES, L.P., and FORUM MANOR | ) | |
| LLC, | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM OF LAW IN SUPPORT OF MOTION OF NON-PARTY CARROLL ORGANIZATION TO QUASH OR FOR PROTECTIVE ORDER

Non-Party Carroll Organization states as follows in further support of its

Motion to Quash or for Protective Order.

### INTRODUCTION

On or about April 15, 2011, the United States of America served upon

Carroll Organization a Subpoena to Testify at a Deposition in a Civil Action. (*See*

Subpoena attached hereto as Exhibit A). The Subpoena included two attachments:

(1) "Appendix A: Matters of Examination"; and (2) "Appendix B: Documents for

Production." For the reasons that follow, many of the matters of examination listed

and the documents requested are overbroad and burdensome and seek irrelevant or

protected information.  Further, the time frame afforded Carroll Organization for

locating and producing documents (14 days) is unreasonable.  Carroll Organization

asks this Court, therefore, to either quash the Subpoena in its entirety or to order an

appropriate protective order consistent with the objections raised in this Motion

and Memorandum.  Further, Carroll Organization requests it be awarded its costs

and attorney fees incurred not only in having to file and prosecute this Motion, but

also in responding to the Subpoena itself to the extent this Court orders that a

deposition and response is necessary.

## BACKGROUND

The underlying action is pending in the United States District Court for the

Eastern District of Missouri, Cause No. 09-CV-1859.  In that action, the United

States seeks to enforce Title VIII of the Civil Rights Act of 1968, as amended by

the Fair Housing Amendments Act of 1988, 42 U.S.C. §§ 3601-3631.  (First

Amended Complaint, ¶ 1.  For the Court's convenience, Carroll Organization

attaches hereto as Exhibit B a copy of the First Amended Complaint from the

underlying lawsuit.)  Carroll Organization is not a party to that lawsuit.  However,

subsequent to the United States' filing of the underlying lawsuit, Carroll

Organization entered into a Stock Purchase Agreement with Gary Hediger

resulting in its purchase of the equity interests of Hediger Enterprises, Inc., which is a defendant in the lawsuit.

**CARROLL ORGANIZATION'S OBJECTIONS AND ARGUMENT**

**A.      The "Matters of Examination" and Requests for Production to which Carroll Organization objects.**

Carroll Organization expressly objects to the portions of the subpoena designated as "Matters of Examination" Nos. 2, 3, 5, 6, 7, 8, 9 and 10, which demand testimony from Carroll Organization on the following topics:

2.      All contractual agreements and other documents setting forth the terms and conditions of the Carroll Organization's acquisition of Hediger Enterprises, Inc. and of the Carroll Organization's oversight, management, or control of Hediger Enterprises, Inc. or Forum Manor Apartments.

3.      The Carroll Organization's oversight, control, and management of Hediger Enterprises, Inc.

5.      Any changes to the oversight, control, and management of Hediger Enterprises, Inc. or Forum Manor Apartments since the acquisition.

6.      Any non-privileged communications with any person concerning any allegations of race, sex or sexual harassment discrimination and/or

retaliation, intimidation and coercion against any employee of Hediger Enterprises.

7.      Any non-privileged communications with any person concerning this litigation or the HUD investigations that led to this litigation (Webster v. Harris, et al., 07-08-0396-8; Hall v. Harris, et al., 07-08-0750-8; L. Smith v. Harris, et al., 07-09-0456-8; and Howard v. Harris, et al., 07-09-0458-8), including the responses thereto by employees of Defendants Hediger Enterprises, Forum Manor Associates and Forum Manor LLC.

8.      The Carroll Organization's rules, policies, procedures and practices concerning race, sex, or sexual harassment discrimination and/or retaliation, intimidation and coercion in housing, including how any such rules, policies and procedures are enforced.

9.      Any personnel matters concerning Forum Manor Apartments, including any investigation or inquiry into any alleged wrongdoing by Roger Harris or any other employee at Forum Manor.

10.     Any complaints or reports of race or sex discrimination, or sexual harassment or other sexual misconduct, against or involving employees or agents of Hediger Enterprises, Inc.

Futhermore, Carroll Organization expressly objects to the Document Production Requests Nos. 1-6 in the subpoena, which request the production of the following documents:

1. All contractual agreements and other documents setting forth the terms and conditions of the Carroll Organization's acquisition of Hediger Enterprises, Inc.

2. All contractual agreements and other documents setting forth the terms and conditions of the Carroll Organization's oversight, management, or control of Hediger Enterprises, Inc.

3. All contractual agreements and other documents setting forth the terms and conditions of the Carroll Organization's oversight, management, or control of Forum Manor Apartments.

4. Any documents, including, but not limited to, emails, letters, or notes, that memorialize or include any non-privileged communication regarding any allegations of race, sex or sexual harassment discrimination and/or retaliation, intimidation and coercion against any employee of Hediger Enterprises.

5. Any documents, including, but not limited to, emails, letter, or notes, that memorialize or include any non-privileged communication

regarding this litigation or the HUD investigations that led to this litigation (Webster v. Harris, et al., 07-08-0396-8; Hall v. Harris, et al., 07-08-0750-8; L. Smith v. Harris, et al., 07-09-0456-8; and Howard v. Harris, et al., 07-09-0458-8).

6.   Any manual or other document regarding the Carroll Organization's rules, policies, procedures and practices concerning race, sex or sexual harassment discrimination and/or retaliation, intimidation and coercion in housing, excluding any documents known to have been produced by Hediger Enterprises in this matter.  To the extent that the Carroll Organization possesses different versions of the documents already known to have been produced by Hediger Enterprises, all such versions should be produced by the Carroll Organization.

**B.    The Grounds for Carroll Organization's Objections to Matters of Examination Nos. 2-3, 5-7, and 10 and Document Production Requests 2, 4, and 5:**

Carroll Organization objects to Matters of Examination Nos. 2-3, 5-7 and 10 to the extent those topics are stated broadly enough to encompass geographic locations and rental complexes other than the Forum Manor Apartments located in Rolla, Missouri ("Forum Manor") and are unlimited in terms of time frame.  In the underlying action pending in the United States District Court for the Eastern

6

District of Missouri, all "Factual Allegations" as alleged in the First Amended

Complaint involve alleged discriminatory behavior at the Forum Manor complex,

by a single Forum Manor employee, Roger Harris. (First Amended Complaint,

Exhibit B hereto, ¶¶ 9-26). Thus, by seeking information beyond Forum Manor,

which is just one of many properties managed by Hediger Enterprises, the United

States has not limited the subpoena in any way to the parties at issue in the

underlying lawsuit or to the alleged actions that form the basis for that lawsuit.[1]

The only rental complex relevant to the underlying action is Forum Manor.

All factual allegations of the First Amended Complaint involve Mr. Harris' alleged

acts or comments which allegedly occurred at the Forum Manor. The lawsuit

focuses upon Mr. Harris, his actions as the Forum Manor manager, Hediger

Enterprises' operation and management of Forum Manor and supervision of Mr.

Harris, and the corporate defendants' knowledge, if any, of Mr. Harris' actions.

No other apartment complexes are mentioned. The case, therefore, focuses

entirely on Mr. Harris, the Forum Manor, and on Hediger's management of Mr.

---

[1] It is important to note that the Honorable Carol Jackson of the United States
District Court for the Eastern District of Missouri has pending before her several
discovery motions related, at least in part, to this same topic, wherein Hediger
Enterprises, Inc., Forum Manor Associates, L.P., and Forum Manor, L.L.C. have
all asserted discovery must be limited to the apartment complex at issue in the case
(Forum Manor) and not delve into other apartment complexes or locations owned,
managed or operated by the corporate defendants, nor into employees of the
corporate defendants who work at locations other than Forum Manor.

Harris and the Forum Manor.  Discovery aimed at ALL properties in any location owned, managed, or operated by Hediger Enterprises is overbroad in the extreme and unduly burdensome in light of the dozens of properties which would be included in the requests.  Thus, any deposition topics for a Carroll Organization designee should be appropriately limited in scope to Forum Manor itself and to employees at that complex.  Requiring Carroll Organization to produce a designee on these irrelevant and unlimited topics would be oppressive and impose a burden on this non-party which far outweighs any arguably admissible evidence which may come out of it.

On these same grounds, Carroll Organization also objects to Document Production Requests Nos. 2 and 4-5 to the extent those document requests are stated broadly enough to encompass geographic locations and rental complexes other than Forum Manor and are unlimited in terms of time frame.

**C.** **The grounds for Carroll Organization's additional Objections to Matter of Examination No. 2 and Document Production Requests No. 2, as well as its grounds for its objection to Document Production Request Nos. 1 and 3:**

Matter of Examination No. 2 calls for Carroll Organization to offer testimony regarding its purported acquisition of Hediger Enterprises, and Requests for Documents 1-3 request the production of intimate documents relating to this transaction, as well as documents relating to Carroll Organization's oversight,

8

management, or control of Hediger Enterprises, Inc.  To the extent any documents regarding Carroll Organization's purchase of the equity interests of Hediger Enterprises, Inc. contain financial details of the transaction, such as consideration paid, manner and method of payment, etc., Carroll Organization objects to having to disclose and produce in any fashion such financially sensitive information or provide deposition testimony thereon.  Such is not relevant or material to any issue in the underlying case.  Carroll Organization further objects to having to provide any other testimony or produce any documents related to the general terms and conditions of its equity purchase without an appropriate protective order in place preventing any further dissemination of the information and/or documents.

**D.      The Carroll Organization's Grounds for its Objections to Matter of Examination No. 8 and Document Production Requests No. 6:**

Carroll Organization objects to Matter of Examination No. 8 and Document Production Request No. 6 to the extent they seek testimony and documents relative to Carroll Organization separate and apart from Hediger Enterprises, Inc. and Forum Manor.  Matter of Examination No. 8 seeks testimony as to "The Carroll Organization's rules, policies, procedures and practices concerning race, sex or sexual harassment discrimination and/or retaliation, intimidation and coercion in housing, including how any such rules, policies and procedures are enforced."  Carroll Organization, however, is not a party to the underlying lawsuit and, as

such, its rules, policies, procedures and practices are irrelevant and not calculated to lead to admissible evidence in that lawsuit. It cannot be argued that its purchase of the equity interests of Hediger Enterprises, Inc. makes its own policies and rules on these topics relevant since the transaction did not take place until March 25, 2010, well after the alleged discrimination at issue and the filing of the underlying lawsuit.

Similarly, Documents for Production No. 6 seeks "Any manual or other document regarding the Carroll Organization's rules, policies, procedures and practices concerning race, sex or sexual harassment discrimination and/or retaliation, intimidation and coercion in housing…" Again, Carroll Organization's rules and policies are not at issue in the underlying case. Not only are the underlying allegations against a totally separate entity and not against Carroll Organization, but Carroll Organization did not even purchase the equity interests of that entity until after the underlying lawsuit had been filed.

**E.**   **The Carroll Organization's Grounds for its Objection to Matter of Examination No. 9:**

Carroll Organization objects to Matter of Examination No. 9 as overbroad in that it potentially includes matters beyond the allegations of the underlying lawsuit. The lawsuit pending in the Eastern District of Missouri concerns alleged race and sex discrimination. (*See* Exhibit B hereto). Matter of Examination No. 9 does not

limit itself to such allegations, instead broadly seeking testimony regarding "*Any* personnel matters concerning Forum Manor Apartments, including any investigation or inquiry into *any* alleged wrongdoing by Roger Harris or any other employee at Forum Manor." (emphasis added). This request goes well beyond what is at issue in the underlying lawsuit and is improper.

## FED. R. CIV. P. 37(a)(1) CERTIFICATION

Undersigned counsel for Non-Party Carroll Organization hereby certifies that he, along with Counsel for Hediger Enterprises, Inc., Peter J. Krane, Esq. and Lisa A. Larkin, Esq., have conferred in good faith with counsel for United States of America in an attempt to resolve these discovery disputes, but those efforts have proven unsuccessful.

## CONCLUSION

WHEREFORE, based on the foregoing and Fed. R. Civ. P. 45, Carroll Organization respectfully requests that this Court enter an Order quashing the Subpoena, or that this Court enter an appropriate protective order to protect this non-party as outlined above. Furthermore, Carroll Organization respectfully requests that this Court enter an Order requiring the Plaintiff to reimburse the Carroll Organization for its costs and attorney fees incurred in filing this Motion

and in responding to the Subpoena (to the extent this Court deems a response is necessary), and for such other and further relief as the Court deems just and proper.

Respectfully submitted this 6th day of May 2011.

By:_____

Michael A. Dunn
Georgia Bar No. 140992
Alec N. Sedki
Georgia Bar No. 634080
SEDKI & DUNN, LLC
3399 Peachtree Road
Suite 400
Atlanta, GA 30326
Telephone:   404.995.0080
Facsimile:   404.751.5141

Attorneys for Non-Party
Carroll Organization, LLC

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this 6th day of May, 2011 caused the within and foregoing document to be served on counsel for all parties in Civil Action No. 4:09-CV-01859 in the United States District Court for the Eastern District of Missouri via U.S. Mail with adequate postage affixed thereon and properly addressed to:

Mary Hahn
Max Lapertosa
U.S. DEPARTMENT OF JUSTICE
Civil Rights Division
Housing and Civil Enforcement Section
950 Pennsylvania Avenue NW
Northwestern Building, 7th Floor
Washington, DC 20530

Richard G. Callahan
Jane Rund
111 S. Tenth Street, 20th Floor
St. Louis, MO 63102

*ATTORNEYS FOR PLAINTIFF*

Timothy K. Kellett
HORAS, RADICE & KELLETT
911 Washington Avenue, Ste. 400
St. Louis, MO 63101
*ATTORNEYS FOR DEFENDANT*
*ROGER HARRIS*

_____
Michael A. Dunn

## <u>LOCAL RULE 7.1(D) CERTIFICATION</u>

Pursuant to Local Rule 7.1(D), I hereby certify that this brief has been

prepared with Times New Roman, 14 point.

_____
Michael A. Dunn

# EXHIBIT A

AO 88A  (Rev. 06/09) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Northern District of Georgia

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.  09-CV-1859 |
| ROGER HARRIS, ET AL., | ) | |
| | ) | (If the action is pending in another district, state where: |
| *Defendant* | ) | Eastern District of Missouri              ) |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:  CARROLL ORGANIZATION
    3340 Peachtree Road, Suite 1820, Atlanta, GA 30326

☑ *Testimony:*  **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization that is *not* a party in this case, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

See attachment A.

| Place: Office of the United States Attorney<br>Northern District of Georgia<br>75 Spring Street, S.W., Suite 600, Atlanta, GA 30303 | Date and Time:<br><br>04/29/2011 9:00 am |
|---|---|

The deposition will be recorded by this method:   Stenographically and by videotape

☑ *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material:

See attachment B.

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date:  04/13/2011

        *CLERK OF COURT*

                                  OR

_____      _____
   *Signature of Clerk or Deputy Clerk*               *Attorney's signature*

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*   United States of America
_____, who issues or requests this subpoena, are:

Jessica Clarke Crockett, Trial Attorney
U.S. Department of Justice, Civil Rights Division, Housing and Civil Enforcement Section
1800 G Street NW, Room 7015, Washington, DC  20006  Tel: (202) 305-4013  Fax: (202) 514-1116

AO 88A (Rev. 06/09) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.  09-CV-1859

### PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named individual as follows: _____

_____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____        _____
                                                          *Server's signature*

                                                        _____
                                                          *Printed name and title*

                                                        _____
                                                          *Server's address*

Additional information regarding attempted service, etc:

AO 88A (Rev. 06/09) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information;

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

## APPENDIX A: MATTERS OF EXAMINATION

1. The Carroll Organization's acquisition of Hediger Enterprises, Inc., including, but not limited to, whether the Carroll Organization agreed to assume any of Hediger's liabilities, any changes to Hediger's corporate structure following the acquisition, and any changes in Hediger's personnel or disposition of any of Hediger's assets as a result of the acquisition.

2. All contractual agreements and other documents setting forth the terms and conditions of the Carroll Organization's acquisition of Hediger Enterprises, Inc. and of the Carroll Organization's oversight, management, or control of Hediger Enterprises, Inc. or Forum Manor Apartments.

3. The Carroll Organization's oversight, control, and management of Hediger Enterprises, Inc.

4. The Carroll Organization's oversight, control, and management of Forum Manor Apartments.

5. Any changes to the oversight, control, and management of Hediger Enterprises, Inc. or Forum Manor Apartments since the acquisition.

6. Any non-privileged communications with any person concerning any allegations of race, sex or sexual harassment discrimination and/or retaliation, intimidation and coercion against any employee of Hediger Enterprises.

7. Any non-privileged communications with any person concerning this litigation or the HUD investigations that led to this litigation (Webster v. Harris, et al., 07-08-0396-8; Hall v. Harris, et al., 07-08-0750-8; L. Smith v. Harris, et al., 07-09-0456-8; and Howard v. Harris, et al., 07-09-0458-8), including the responses thereto by

employees of Defendants Hediger Enterprises, Forum Manor Associates and Forum Manor LLC.

8. The Carroll Organization's rules, policies, procedures and practices concerning race, sex or sexual harassment discrimination and/or retaliation, intimidation and coercion in housing, including how any such rules, policies and procedures are enforced.

9. Any personnel matters concerning Forum Manor Apartments, including any investigation or inquiry into any alleged wrongdoing by Roger Harris or any other employee at Forum Manor.

10. Any complaints or reports of race or sex discrimination, or sexual harassment or other sexual misconduct, against or involving employees or agents of Hediger Enterprises, Inc.

## APPENDIX B: DOCUMENTS FOR PRODUCTION

1. All contractual agreements and other documents setting forth the terms and conditions of the Carroll Organization's acquisition of Hediger Enterprises, Inc.

2. All contractual agreements and other documents setting forth the terms and conditions of the Carroll Organization's oversight, management, or control of Hediger Enterprises, Inc.

3. All contractual agreements and other documents setting forth the terms and conditions of the Carroll Organization's oversight, management, or control of Forum Manor Apartments.

4. Any documents, including, but not limited to, emails, letters, or notes, that memorialize or include any non-privileged communication regarding any allegations of race, sex or sexual harassment discrimination and/or retaliation, intimidation and coercion against any employee of Hediger Enterprises.

5. Any documents, including, but not limited to, emails, letters, or notes, that memorialize or include any non-privileged communication regarding this litigation or the HUD investigations that led to this litigation (*Webster v. Harris, et al.*, 07-08-0396-8; *Hall v. Harris, et al.*, 07-08-0750-8; *L. Smith v. Harris, et al.*, 07-09-0456-8; and *Howard v. Harris, et al.*, 07-09-0458-8).

6. Any manual or other document regarding the Carroll Organization's rules, policies, procedures and practices concerning race, sex or sexual harassment discrimination and/or retaliation, intimidation and coercion in housing, excluding any documents known to have been produced by Hediger Enterprises in this

matter. To the extent that the Carroll Organization possesses different versions of the documents already known to have been produced by Hediger Enterprises, all such versions should be produced by the Carroll Organization.

# EXHIBIT B

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 09-CV-1859 (CEJ) |
| v. | ) | |
| | ) | |
| ROGER HARRIS, HEDIGER | ) | |
| ENTERPRISES, INC., FORUM MANOR | ) | |
| ASSOCIATES, L.P., and FORUM MANOR | ) | |
| LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**FIRST AMENDED COMPLAINT**

The United States of America ("United States") alleges as follows:

**NATURE OF THE ACTION**

1.      This action is brought by the United States to enforce Title VIII of the Civil

Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988 ("Fair Housing

Act"), 42 U.S.C. §§ 3601-3631.  It is brought on behalf of Anna Webster and her minor child,

T.F.; Crystal Hall and her minor children, H.H, J.H., B.H. and K.H.; Lindsey Smith; and Daniel

Howard and his minor children, Br.H. and Be.H., pursuant to 42 U.S.C. §§ 3612(o) and 3614(a).

**JURISDICTION AND VENUE**

2.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1345,

42 U.S.C. § 3612(o) and 42 U.S.C. § 3614(a).

3.      Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial

part of the events or omissions giving rise to the United States' claims occurred there.

## DEFENDANTS AND THE SUBJECT PROPERTY

4.      Forum Manor Apartments ("Forum Manor") is a 44-unit residential property located at 1900 Farrar Drive in Rolla, Missouri that is subsidized under the project-based Section 8 housing assistance program. See 42 U.S.C. § 1437f(a)-(k). Forum Manor's units are "dwellings" within the meaning of the Fair Housing Act, 42 U.S.C. § 3602(b).

5.      Defendant Roger Harris is a 52-year-old white resident of Rolla, Missouri. At all times relevant to this case, Mr. Harris has been Forum Manor's property manager. Mr. Harris is responsible for all aspects of management at Forum Manor, including interviewing and approving prospective tenants, processing rental applications, determining tenant rent payments and overseeing maintenance staff.

6.      Defendant Hediger Enterprises, Inc., is a South Carolina corporation that operates approximately 60 residential properties in multiple states, including Forum Manor. Hediger Enterprises hired Roger Harris as the property manager of Forum Manor, both on its own behalf and on behalf of Forum Manor Associates, L.P. and Forum Manor LLC, and supervises him as its employee. Gary Hediger is the President of Hediger Enterprises.

7.      Defendant Forum Manor Associates, L.P., is a Missouri limited partnership that owns Forum Manor. It is located at the same address as Hediger Enterprises. Forum Manor Associates' only general partner is Forum Manor LLC.

8.      Defendant Forum Manor LLC is a South Carolina corporation that is located at the same address as Hediger Enterprises. Forum Manor LLC's sole member is Gary Hediger.

## FACTUAL ALLEGATIONS

9.      On or about June 18, 2008, Crystal Hall, who is African-American and has four

2

children, visited Forum Manor's rental office to apply for an apartment. Before she could enter the office, Defendant Harris told Ms. Hall, "I don't rent to people who look like you," or words to that effect. When Ms. Hall attempted to tell Mr. Harris that she had a job, Mr. Harris said, "I'm the owner and I don't rent to people who look like you," or words to that effect, and shut the door. Mr. Harris refused to provide Ms. Hall with a rental application or otherwise allow her to apply for an apartment.

10. Mr. Harris told Anna Webster, a white tenant whose ex-husband is African-American and whose children are biracial, that she could not have African-American guests at her unit because it would scare other tenants. At the time, Ms. Webster relied on her African-American brother-in-law to babysit her three-year old son while Ms. Webster attended school.

11. Mr. Harris has told other tenants not to have African-American visitors or guests because "people around here don't like black people" and because he "had had enough of them going in and out of [Forum Manor]," or words to that effect. Mr. Harris also told the young children of a white tenant that they could not have African-American friends visit them at Forum Manor.

12. In conversations with Ms. Webster and other Forum Manor tenants, Mr. Harris frequently referred to African-Americans as "niggers" and disparaged them, claiming, for example, that they never paid child support and are "dirty," or words to that effect. Mr. Harris called Ms. Webster's youngest son, who is biracial, a "nigglet" and referred to other biracial children at the property as "brown babies."

13. On or about March 16, 2008, Mr. Harris responded to an emergency maintenance call at Ms. Webster's apartment and found a biracial couple, who were out-of-town guests of Ms.

3

Webster's, sitting outside on Ms. Webster's porch.  Mr. Harris became irate and told Ms.

Webster, "What did I tell you about having all these niggers in your house?"

14.     As a result of Mr. Harris' discriminatory conduct and actions, Ms. Webster moved

out of Forum Manor in September 2008.

15.     On April 11, 2008, Anna Webster filed a discrimination complaint with the U.S.

Department of Housing and Urban Development (HUD) pursuant to 42 U.S.C. § 3610(a).  Mr.

Harris was notified of this complaint and was aware that HUD investigators were interviewing

tenants at Forum Manor during the summer of 2008.

16.     Following this complaint and investigation, Mr. Harris took a number of adverse

actions against Ms. Webster, including: 1) falsely accusing her brother-in-law of living in the

unit; 2) attempting, unsuccessfully, to have Ms. Webster arrested for intentional property

damage; and 3) repeatedly driving up and down the street in front of the house she moved into

after leaving Forum Manor.

17.     On or about October 13-14, 2008, Daniel Howard, a white single male with two

children, called Forum Manor's rental office and left messages stating that he wanted to apply for

a unit.  Later that week, Mr. Harris called Mr. Howard back and told him that no units were

available.  In fact, there were vacant units at Forum Manor at this time.

18.     Mr. Howard told Mr. Harris that he nevertheless wanted to submit an application

and went to Forum Manor's rental office that day to do so.  Mr. Howard informed Mr. Harris that

he was a single father and was self-employed.  Mr. Harris responded that he "had something for

single mothers but not for single fathers," or words to that effect.  Mr. Harris refused to provide

Mr. Howard an application.

4

19.     Mr. Harris has told at least one other male applicant that he could not rent to him because he was unemployed. Mr. Harris has rented to female applicants who were unemployed.

20.     Mr. Harris sexually harassed female tenants and created a hostile environment at Forum Manor by, inter alia, commenting on tenants' body parts and making other inappropriate sexual remarks; making unwelcome sexual advances such as rubbing his hands on the backs of female tenants; suggesting that he would waive fees and other charges for sexual favors; peering into female tenants' windows late at night; and asking female tenants on dates or to come to his house. When tenants refused Mr. Harris' sexual advances, he became angry and, at times, threatened female tenants' eligibility for federal housing assistance.

21.     Mr. Harris told Lindsey Smith, a 24-year-old Forum Manor tenant, that she was "hot" and "looked good for a woman with two children," or words to that effect. Mr. Harris tried to convince her not to have a boyfriend. He invited her to dinner and asked her to help clean his house, both of which she declined. Mr. Harris also touched Ms. Smith by rubbing her shoulders and back. These advances were unwelcome and made Ms. Smith feel uncomfortable. She feared she would lose her housing if she upset Mr. Harris by spurning his advances.

22.     In or about December 2007, Mr. Harris came to Ms. Smith's apartment uninvited late one evening while her boyfriend was away. During this visit, Mr. Harris made unwelcome sexual advances on Ms. Smith by trying to touch her, which she spurned. Mr. Harris repeatedly refused to leave the premises after Ms. Smith stated she was tired and wanted to go to bed.

23.     In February 2008, Ms. Smith married her boyfriend, Jess Smith, and attempted to add him to her lease. Mr. Harris, however, refused to process Mr. Smith's application and refused to allow Mr. Smith to live with his wife at Forum Manor. Mr. Harris also threatened to

5

terminate Ms. Smith's lease because Mr. Smith was living with her.

24.     On August 22, 2008, a HUD investigator interviewed Ms. Smith at her apartment and was seen leaving by a Forum Manor employee.

25.     On August 25, 2008, Mr. and Ms. Smith and their children were getting into their van at Forum Manor when Mr. Harris pulled up in his truck, blocking one side of the Smiths' van. Another Forum Manor employee blocked the other side of the Smiths' van with his vehicle. Mr. Harris got out of his truck and began yelling at Ms. Smith in front of her children, stating that he would not allow Mr. Smith to move in with her. Mr. and Ms. Smith were intimidated and feared that Mr. Harris might physically harm them.

26.     As a result of Mr. Harris' discriminatory conduct and actions, Mr. and Ms. Smith moved out of Forum Manor in November 2008.

27.     Anna Webster, Lindsey Smith, Crystal Hall and Daniel Howard timely filed complaints of discrimination with the U.S. Department of Housing and Urban Development ("HUD"), pursuant to 42 U.S.C. § 3610(a).

28.     Pursuant to 42 U.S.C. § 3610(a) and (b), the Secretary of HUD investigated these complaints, attempted conciliation without success, and prepared final investigative reports. Based on the information gathered in the course of this investigation, the Secretary, pursuant to 42 U.S.C. § 3610(g), determined that reasonable cause existed to believe that Defendants violated the Fair Housing Act. Accordingly, on September 24, 2009, pursuant to 42 U.S.C. § 3610(g)(2)(A), the Secretary issued a Determination of Reasonable Cause and Charge of Discrimination against Defendants Harris, Hediger and Forum Manor Associates.

29.     On October 14, 2009, Crystal Hall timely elected to have these charges resolved

6

in a federal civil action, pursuant to 42 U.S.C. § 3612(a).

30.    The Secretary of HUD subsequently authorized the Attorney General to file this action on behalf of these HUD complainants, pursuant to 42 U.S.C. § 3612(o).

## FIRST CLAIM FOR RELIEF

31.    Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1-30, supra.

32.    By the actions and statements referred to in the foregoing paragraphs, Defendants have:

(a)    Refused to rent, refused to negotiate for the rental for, or otherwise made unavailable or denied, a dwelling because of race and sex, in violation of 42 U.S.C. § 3604(a);

(b)    Discriminated in the terms, conditions or privileges of the rental of a dwelling, or in the provision of services or facilities in connection therewith, on the basis of race, in violation of 42 U.S.C. § 3604(b);

(c)    Made statements with respect to the rental of a dwelling that indicated a preference, limitation or discrimination based on race and sex, in violation of 42 U.S.C. § 3604(c);

(d)    Represented, because of sex, that a dwelling is not available for inspection or rental when such dwelling is in fact so available, in violation of 42 U.S.C. § 3604(d);

(e)    Coerced, intimidated, threatened or interfered with persons in the exercise or enjoyment of, or on account of their having exercised or enjoyed, their

7

rights under the Fair Housing Act, in violation of 42 U.S.C. § 3617.

33.     Crystal Hall and her children have suffered damages as a result of Defendants'

violations of 42 U.S.C. §§ 3604(a) and (c).  Anna Webster and her children have suffered

damages as a result of Defendants' violations of 42 U.S.C. §§ 3604(b) and (c) and 3617.  Lindsey

Smith has suffered damages as a result of Defendants' violations of 42 U.S.C. §§ 3604(b) and

3617.  Daniel Howard and his children have suffered damages as a result of Defendants'

violations of 42 U.S.C. §§ 3604(a), (c) and (d).  Each is an "aggrieved person" pursuant to 42

U.S.C. § 3602(i).

34.     Defendants' actions, as set forth above, were intentional, willful and/or taken in

reckless disregard for the rights of others.

## SECOND CLAIM FOR RELIEF

35.     Plaintiff re-alleges and incorporates by reference the allegations set forth in

paragraphs 1-34, supra.

36.     Defendants' actions, conduct and statements, as described above, constitute:

      (a)     A pattern or practice of resistance to the full enjoyment of rights granted

           by the Fair Housing Act, 42 U.S.C. §§ 3601-3631, in violation of 42

           U.S.C. § 3614(a); or

      (b)     A denial to a group of persons of rights granted by the Fair Housing Act,

           42 U.S.C. §§ 3601-3631, which raises an issue of general public

           importance, in violation of 42 U.S.C. § 3614(a).

37.     In addition to Anna Webster, Lindsey Smith, Jess Smith, Crystal Hall and Daniel

Howard and their children, other persons may have been injured by Defendants' discriminatory

8

actions and practices as described above.  Such individuals are also "aggrieved persons" under the Fair Housing Act, 42 U.S.C. § 3602(i).

WHEREFORE, the United States prays that this Court enter an order that:

1.      Declares that Defendants' actions, policies and practices, as alleged herein, violate the Fair Housing Act;

2.      Declares that Defendants have engaged in a pattern or practice of discrimination in violation of the Fair Housing Act, or have denied rights guaranteed under the Fair Housing Act to a group of persons, which denial raises an issue of general public importance;

3.      Enjoins Defendants, their agents, employees and successors, and all other persons in active concert or participation with them, from:

(a)     discriminating on the basis race, color, or sex in any aspect of the rental or lease of a dwelling;

(b)     discriminating in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, on the basis of race;

(c)     stating any preference, limitation or discrimination on the basis of race, color, or sex;

(d)     representing, on the basis of race or sex, that a dwelling is not available for inspection or rental when such dwelling is in fact so available;

(e)     coercing, intimidating, threatening or interfering with any person in the exercise or enjoyment of, or on account of their having exercised or enjoyed, their rights under the Fair Housing Act; and

9

(e)     failing or refusing to take such steps as may be necessary to prevent the

recurrence of any discriminatory conduct in the future and to eliminate, to

the extent practicable, the effects of Defendants' unlawful housing

practices;

4.     Award monetary damages, pursuant to 42 U.S.C. §§ 3612(o)(3) and 3613(c)(1)

and 3614(d)(1)(B), to all persons harmed by Defendants' discriminatory practices; and

5.     Assess a civil penalty against Defendants, pursuant to 42 U.S.C. § 3614(d)(1)(C),

to vindicate the public interest.

The United States further prays for such additional relief as the interests of justice may require.

Dated: April 8, 2010.

ERIC HOLDER
Attorney General

MICHAEL W. REAP
Acting United States Attorney

s/ Thomas E. Perez
THOMAS E. PEREZ
Assistant Attorney General
Civil Rights Division

s/ Jane Rund
JANE RUND
Assistant United States Attorney
Thomas Eagleton U.S. Courthouse
111 South 10th Street, 20th Floor
St. Louis, MO 63102
Phone: (314) 539-2200
Fax: (314) 539-2309

s/ Steven H. Rosenbaum
STEVEN H. ROSENBAUM
Chief, Housing and Civil
    Enforcement Section
Civil Rights Division

s/ Max Lapertosa
REBECCA B. BOND
Deputy Chief
MAX LAPERTOSA
Attorney
Housing and Civil Enforcement Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue NW
Northwestern Building, 7th Floor
Washington, DC 20530
Phone: (202) 305-1077
Fax: (202) 514-1116